Filed 4/30/15  P. v. Ybarra CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LARRY JAMES YBARRA,<br><br>    Defendant and Appellant. | H040106<br>(Santa Clara County<br>Super. Ct. No. C1091150) |

On July 26, 2012, a jury convicted appellant Larry James Ybarra of second degree robbery.  (Pen. Code, §§ 211, 212.5.) [1]  Thereafter, appellant admitted that he had sustained five prior strikes (§§ 667, subds. (b)-(i), 1170.12), had two serious felony priors (§ 667, subd. (a)), and had served a prior prison term within the meaning of section 667.5, subdivision (b).

On appeal, appellant claims that there was instructional error at his trial; and he contends that he is entitled to an additional day of presentence custody credit.  We find no instructional error.  Further, we conclude that appellant is not entitled to one additional day of presentence custody credit.  Accordingly, we affirm the judgment.

*Facts*

On October 29, 2010, appellant walked into a Safeway store and took a can of beer without paying for it.  Loss prevention officers Ernesto Fernandez and Jessica Ramirez were on duty that day in the store; both were in plain clothes.

---

[1]    All unspecified statutory references are to the Penal Code.

Fernandez saw appellant take the beer, but decided not to stop him. Approximately two hours later, appellant returned to the store and took another beer; he concealed it in his pants and walked out the front door of the store.[2]

Fernandez stopped appellant outside the store by standing in front of him. Fernandez identified himself as a loss prevention officer and said that he knew appellant had a can of beer in his pants. Appellant pushed his bicycle at Fernandez and then became combative; appellant tried to punch Fernandez. Fernandez testified that he felt he needed to defend himself.

Fernandez blocked appellant's punches and tried to control his movements. They backed up into the street where Fernandez took appellant to the ground. Fernandez tried to handcuff appellant, but appellant fought and kicked. Fernandez and appellant were both on the ground when appellant reached over his head and choked Fernandez with both hands, making it difficult for Fernandez to breathe. Appellant dug his fingernails into Fernandez's neck. Fernandez placed appellant in a "rear naked choke" in order to stop appellant.[3] Appellant continued to resist. Fernandez applied pressure with the choke hold in an effort to stop appellant from struggling.

Fernandez began bleeding from his neck. At some point he told Ramirez to call the police. A man who was walking by attempted to hold appellant's feet down and someone shouted at appellant to stop resisting. Ramirez tried to help by holding appellant's legs down while he was kicking.

Eventually, appellant stopped resisting. Fernandez handcuffed him and took him into the store. On the way into the loss prevention office, appellant reached around and fidgeted and tried to get away from Fernandez. Appellant began reaching into his pocket.

---

[2]     A criminalist at the Santa Clara County Crime Laboratory tested a specimen of appellant's blood; the test revealed methamphetamine and amphetamine in his blood.
[3]     Fernandez explained that a rear naked choke is a move that comes from mixed martial arts.

Fernandez told him to take his hand away from his pocket, but appellant managed to get his hand about halfway in before Fernandez removed appellant's hand. Fernandez searched appellant's pocket and found a blade from a utility knife inside.

After the jury returned a guilty verdict and appellant admitted the prior conviction and prison prior allegations, the court sentenced appellant to 15 years in prison. The court imposed the mitigated term of two years for the robbery, doubled to four years under section 667, subdivision (e)(1) to which it added two five-year terms for prior convictions (§ 667, subd. (a)) and one year for the prison prior (§ 667.5, subd. (b)).

*Discussion*

*Alleged Instructional Error—Refusal to Give a Defense Pinpoint Instruction*

The court stated that it would instruct the jury pursuant to CALCRIM No. 1600, which provides, as relevant here, "The defendant is charged [in Count ] with robbery [in violation of Penal Code section 211]. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took property that was not (his/her) own; [¶] 2. The property was in the possession of another person; [¶] 3. The property was taken from the other person or (his/her) immediate presence; [¶] 4. The property was taken against that person's will; [¶] 5. The defendant used force or fear to take the property or to prevent the person from resisting; [¶] AND [¶] 6. When the defendant used force or fear to take the property, (he/she) intended (to deprive the owner of it permanently/ [or] to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property). [¶] The defendant's intent to take the property must have been formed before or during the time (he/she) used force or fear. If the defendant did not form this required intent until after using the force or fear, then (he/she) did not commit robbery."[4]

---

[4] The instruction as given by the court did not differ in any significant way from the standard CALCRIM instruction.

3

During discussions concerning jury instructions, defense counsel requested that the court give the following special instruction: "The act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal." Defense counsel cited *Rodriguez v. Superior Court* (1984) 159 Cal.App.3d 821, to support the request.[5] Defense counsel argued that CALCRIM No. 1600 was confusing as to element five on the use of force and the special instruction was "necessary to cover this situation where any application or use of force or fear is for some purpose other than to permanently deprive the property, for example, protecting one's bodily integrity as one possible example." Defense counsel asserted that CALCRIM No. 251,[6] the instruction on the union of act and specific intent, was too vaguely worded and that the special instruction was necessary to give additional guidance to the jury.

---

[5] In *Rodriguez v. Superior Court*, *supra*, 159 Cal.App.3d 821, a rape and robbery case in which the victim left her purse in the defendant's car before he forced her out, raped her, and drove away, the First District Court of Appeal was faced with the question of whether there was sufficient evidence that the defendant's intent to steal the victim's purse existed before or during the time he forced her out of his car to rape her. (*Id.* at pp. 823, 825.) In analyzing the question, the court concluded that similar to "the nonviolent taking in larceny, the act of force or intimidation by which the taking is accomplished in robbery *must be motivated by the intent to steal* in order to satisfy the requirement" (*id.* at p. 826, italics added) of section 20, which requires that in every crime there must exist a union, or joint operation, of act and intent. In *Rodriguez*, since there was no evidence to show the defendant knew the victim's purse was in his car, the court could not draw an inference to support robbery. (*Rodriguez v. Superior Court*, *supra* at p. 827.)

[6] CALCRIM No. 251 provides "The crime[s] [(and/or) other allegation[s]] charged in this case require proof of the union, or joint operation, of act and wrongful intent. [¶] For you to find a person guilty of the crime[s] (in this case/ of *<insert name[s] of alleged offense[s] and count[s], e.g., burglary, as charged in Count 1>* [or to find the allegation[s] of *<insert name[s] of enhancement[s]>* true]), that person must not only intentionally commit the prohibited act [or intentionally fail to do the required act], but must do so with a specific (intent/ [and/or] mental state). The act and the specific (intent/ [and/or] mental state) required are explained in the instruction for that crime [or allegation]."

4

The court refused to give the instruction, stating in essence that the instruction did not accurately state the law in that *People v. Anderson* (2011) 51 Cal.4th 989 and *People v. Davis* (2009) 46 Cal.4th 539, "reflected negatively" on defense counsel's proposed instruction. The court believed that the proposed instruction would "tend to confuse the process" because it combined "two separate concepts, one is motive and specific intent." Subsequently, defense counsel suggested that his proposed instruction be modified to read "the act of force or intimidation by which the taking is accomplished in robbery must be done with specific intent to steal[.]" The court rejected the suggestion, stating that it was duplicative of CALCRIM No. 1600.

Appellant argues that the trial court erred in refusing to give the special instruction "although it was a correct statement of law and necessary to elucidate the fundamental issue in the case."

"In California, robbery is defined as 'the felonious taking of personal property in the possession of another . . . , from his person or immediate presence, and against his will, accomplished by means of force or fear.' (§ 211.) *Theft and robbery have the same felonious taking element, which is the intent to steal, or to feloniously deprive the owner permanently of his or her property*. [Citation.]" (*People v. Bacon* (2010) 50 Cal.4th 1082, 1117, italics added.) It is well established that " '[r]obbery is larceny with the aggravating circumstances that "the property is taken from the person or presence of another . . ." and "is accomplished by the use of force or by putting the victim in fear of injury." [Citation.]' [Citation.] While the larceny statute (§ 484) does not set forth the intent required, our Supreme Court has long held the crime to require a specific intent to steal, i.e., 'to deprive the owner of the property *permanently*.' [Citations.] This specific intent requirement is 'part of the common law of larceny of which . . . section 484 is declaratory.' [Citation.] For purposes of larceny, the intent to steal 'must exist at the time of the taking and carrying away.' [Citations.] And while the robbery statute similarly does not set forth the intent required, this crime also requires a specific intent to

5

steal, which must exist at the time of the act of force or intimidation used to accomplish the taking and carrying away. [Citations.] This too is part of the common law of robbery, of which section 211 is declaratory. [Citation.] [¶] Thus, robbery has been described as 'a combination of assault and larceny.' [Citation.] In order to constitute robbery, both the assault and the larceny must have been done with the specific intent to steal." (*People v. McCoy* (2013) 215 Cal.App.4th 1510, 1540-1541, second italics omitted.) Additionally, the requisite forcible act may be an act committed after the initial taking if it is motivated by the intent to retain the property. (*People v. Gomez* (2008) 43 Cal.4th 249, 265.)

In other words, the force or fear may occur at the time of the taking or "may be an act committed after the initial taking if it is motivated by the intent to retain the property." (*People v. Anderson*, *supra*, 51 Cal.4th at p. 995; see *People v. Hodges* (2013) 213 Cal.App.4th 531, 541-542 [there is no single temporal point at which the elements must come together in order to constitute the offense of robbery. Rather, robbery, like larceny, is a continuing offense; all the elements must be satisfied before the crime is completed but no artificial parsing is required as to the precise moment or order in which the elements are satisfied].) Thus, the use of force or fear to escape or otherwise retain even temporary possession of the property is sufficient for robbery. (*People v. McKinnon* (2011) 52 Cal.4th 610, 686; *People v. Gomez*, *supra*, 43 Cal.4th at p. 257.)

In essence, appellant's defense was that he was struggling with the loss prevention officer not because he was intending to permanently deprive him of the can of beer, but because "he [was] simply intending to try to protect himself, to try to protect his body[.]"

"A trial court must instruct the jury, even without a request, on all general principles of law that are ' "closely and openly connected to the facts and that are necessary for the jury's understanding of the case." [Citation.] In addition, "a defendant has a right to an instruction that pinpoints the theory of the defense. . . ." ' [Citation.] The court may, however, 'properly refuse an instruction offered by the defendant if it

6

incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation].' [Citation.]" (*People v. Burney* (2009) 47 Cal.4th 203, 246.)

Even if this court assumed for the sake of argument that defense counsel's proposed instruction correctly stated the law and was not potentially confusing, it was not supported by substantial evidence. The evidence showed that appellant used force or fear when he pushed his bicycle at the loss prevention officer and started trying to punch him just as the loss prevention officer approached and identified himself; at this point the robbery was complete. It happened before the struggle with the loss prevention officer. Simply put, there was no evidence that at the moment appellant pushed his bicycle toward the loss prevention officer and started swinging his arms at him he was acting in self-defense. Accordingly, since there was no evidence that appellant's use of force or fear was motivated by anything other than his intent to steal, the court was correct in refusing to give defense counsel's proposed special instruction.

In a supplemental brief, appellant argues that the trial court's refusal to give the pinpoint instruction had the additional consequence of violating his Sixth Amendment right to a jury trial in addition to his Fourteenth Amendment right to due process. Since we have found no error in the trial court's refusal to give appellant's proposed pinpoint instruction, there can be no violation of his Sixth and Fourteenth Amendment rights.

*Alleged Instructional Error—Prosecution's Special Instruction*

Over defense counsel's objection, the court agreed to give an instruction requested by the prosecutor on a merchant's use of force. Specifically, the prosecutor asked for and the court gave the following instruction: "A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises. In making the detention, the merchant may use reasonable amount of

7

nondeadly force necessary to protect himself or herself and to prevent escape of the person detained or the loss of tangible or intangible property."[7]

Appellant argues that the court should not have given this instruction because it was an argumentative pinpoint instruction on the use of force which embodied only the prosecution's view of the force element.

"An instruction is argumentative when it recites facts drawn from the evidence in such a manner as to constitute argument to the jury in the guise of a statement of law. [Citation.] 'A jury instruction is [also] argumentative when it is " 'of such a character as to invite the jury to draw inferences favorable to one of the parties from specified items of evidence.' [Citations.]" ' [Citation.]" (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1244.) Instructions should not "relate particular facts to a legal issue." (*People v. Wharton* (1991) 53 Cal.3d 522, 570.)

Appellant's assertion that the instruction improperly highlighted the prosecution's theory of the case is incorrect. In fact, the instruction incorporated the defense theory—that appellant was responding to the *unreasonable* use of force when he struggled with Fernandez on the ground. Of course, at that time the robbery was already completed—appellant had already pushed his bicycle at Fernandez and started to try to punch him. However, had the jury concluded that appellant did not use any force until after Fernandez put him on the ground, then the instruction would have benefited appellant. In

---

[7]     The instruction is an adaptation of section 490.5, describing the merchant's authority to stop and detain a suspected shoplifter. (*People v. Zelinski* (1979) 24 Cal.3d 357, 364.) Subdivision (f)(1) of section 490.5 provides that "A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises." Subdivision (f)(2) provides that "In making the detention a merchant . . . may use a reasonable amount of nondeadly force necessary to protect himself or herself and to prevent escape of the person detained or the loss of tangible or intangible property."

8

other words, the jury was free to conclude that appellant did nothing after he left the store and Fernandez attacked him and used unreasonable force in trying to detain him. The instruction did not imply that any particular conclusions should be drawn from specific items of evidence or impermissibly direct the jury to make only one inference or relate particular facts to a legal issue. Appellant's position reflects only that the facts favored the People, not that the instruction was improper.

In sum, we reject appellant's contention that the prosecution's proposed special instruction was argumentative.

*Alleged Instructional Error—Flight Instruction*

At the conference on jury instructions, defense counsel objected to the court's giving CALCRIM No. 372—defendant's flight—on the ground that appellant never fled and that the confrontation was the prosecution's evidence of an element of the robbery and not something that occurred subsequent to the robbery.

As given in this case the instruction told the jury that "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

Appellant argues that the instruction should not have been given here because it was argumentative in favor of the prosecution in that it presented appellant's use of force as possible flight from which his guilt could be inferred, while ignoring the scenario put forward by the defense that he used force in self-defense.

As noted *ante*, "[a]n instruction is argumentative when it recites facts drawn from the evidence in such a manner as to constitute argument to the jury in the guise of a statement of law. [Citation.] 'A jury instruction is [also] argumentative when it is " 'of such a character as to invite the jury to draw inferences favorable to one of the

9

parties from specified items of evidence.' [Citations.]" ' [Citation.]" (*People v. Campos*, *supra*, 156 Cal.App.4th at p. 1244.)

As our Supreme Court has noted, the argument that the flight instruction is an "impermissibly argumentative pinpoint instruction[ ] that allow[s] juries to draw improper inferences of guilt . . . has been repeatedly rejected." (*People v. McWhorter* (2009) 47 Cal.4th 318, 377 [addressing predecessor CALJIC No. 2.52 flight instruction]; cf. *People v. Taylor* (2010) 48 Cal.4th 574, 630 [declining invitation to reconsider whether CALJIC No. 2.52 consciousness-of-guilt instruction is impermissibly argumentative]; *People v. Avila* (2009) 46 Cal.4th 680, 710 [flight instruction does not create an unconstitutional permissive inference or lessen the prosecutor's burden of proof, and is proper]; *People v. Mendoza* (2000) 24 Cal.4th 130, 180-181 [rejecting arguments that CALJIC No. 2.52 flight instruction is improper pinpoint instruction and impermissibly argumentative].) We are, of course, bound to follow our high court's firmly established precedent in this regard; thus, we likewise reject appellant's claim. (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Even if we were to agree that instructing the jury with CALCRIM No. 372 under the circumstances of this case was error, as our Supreme Court has repeatedly held, the giving of the instruction would be harmless as the "instruction did not assume that flight was established, leaving that factual determination and its significance to the jury." (*People v. Visciotti* (1992) 2 Cal.4th 1, 61; see *People v. Carter* (2005) 36 Cal.4th 1114, 1182-1183.)

Defense counsel argued that the testimony established that it was Fernandez that moved appellant away from the building; counsel asserted that the "forward movement . . . away from the store, was due to his actions." If, as appellant contends in essence, there was insufficient evidence of flight—he was actually defending himself—the instruction, by its own terms, had no application for the jury.

10

Moreover, where a trial court gives a legally correct but inapplicable instruction, the error " 'is usually harmless, having little or no effect "other than to add to the bulk of the charge." ' [Citation.]" (*People v. Lee* (1990) 219 Cal.App.3d 829, 841; cf. *People v. Visciotti*, *supra*, 2 Cal.4th at p. 61 [even if flight instruction should not have been given, it was clearly harmless].) Such is the case here.

*Alleged Instructional Error—CALCRIM No. 372*

Appellant contends that the aforementioned instruction—CALCRIM No. 372—improperly presumed the commission of a robbery and appellant's guilt. Appellant argues that the "language in CALCRIM 372 stating that flight 'immediately after the crime was committed' may show that the defendant 'was aware of his guilt' presumed the existence of the 'the crime' and [his] guilt in violation of his constitutional due process rights to a presumption of innocence and proof beyond a reasonable doubt by the prosecution of every element of the crime."

We reject any suggestion that the jury would have understood the instruction as a judicial declaration that a crime occurred. There is no reasonable likelihood that the jury so understood the instruction since the trial, arguments, and other instructions undoubtedly put the issue of appellant's guilt before the jury. (See *People v. Cannady* (1972) 8 Cal.3d 379, 392.)

The precise issue of whether the phrase "immediately after the crime was committed" presupposes that a crime was committed was raised and rejected in *People v. Paysinger* (2009) 174 Cal.App.4th 26, 30-31 (*Paysinger*).

The *Paysinger* court began its analysis by recognizing, as do we, that appellate courts review jury instructions as a whole, in light of the trial record, to determine whether it is reasonably likely the jury understood a challenged instruction in the manner claimed. (*Paysinger*, *supra*, 174 Cal.App.4th at p. 30; see also *People v. Solomon* (2010) 49 Cal.4th 792, 822 [a defendant challenging an instruction as being subject to misinterpretation by the jury must demonstrate a reasonable likelihood that the jury

11

understood the instruction in the way the defendant claims].) The court concluded that the word "if" in the instruction's opening clause—" 'If the defendant fled or tried to flee immediately after the crime was committed' "—logically makes the entire clause conditional. Therefore, the court concluded it was "highly unlikely a reasonable juror would have understood the instruction as dictating that 'the crime was committed.' " (*Paysinger*, *supra*, at p. 30.)

Appellant argues that the *Paysinger* court's grammatical construction is wrong. The conditional "if" modifies the verb in the sentence, not the adverbial phrase that modifies the verb. We find *Paysinger* persuasive and disagree that the grammatical construction is wrong. The entire phrase must be construed together and modified by the word "if" such that the jury has to determine both whether defendant had tried to flee and whether he had committed the crime charged. Appellant's convoluted reading of CALCRIM No. 372 is unavailing. If, as he asserts, the instruction presumes the crime was committed, then there is no point in giving an instruction allowing the jury to consider evidence of flight to show he was aware of his guilt because the crime would have already been established. CALCRIM No. 372 contains no language a reasonable juror could construe as mandatory.

We remind appellant that the propriety of jury instructions is determined from " ' the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' [Citation.]" (*People v. Jeffries* (2000) 83 Cal.App.4th 15, 22.) The first sentence of the instruction refers to an inference that flight "may show" that the defendant was "aware of his guilt." However, the instruction does not presume a defendant's guilt. Nor does it require the jury to find that a defendant in fact fled the scene or direct that a particular inference be drawn. Rather, the instruction is phrased in permissive and conditional, not mandatory, terms, such as "[i]f the defendant fled," "[i]f you conclude," and "it is up to you to decide . . . ." (CALCRIM No. 372.) The instruction informed the jury that it could consider evidence of flight along with all the

12

other evidence, and should give the evidence whatever meaning and weight it deemed appropriate. (See *People v. Carter*, *supra*, 36 Cal.4th at pp. 1182-1183.) Moreover, the instruction emphasized that evidence of flight was not alone sufficient to establish guilt: "The cautionary nature of the [flight] instruction[ ] benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1224.)

Here, the trial court gave standard instructions on the presumption of innocence, direct and circumstantial evidence, the prosecution's burden of proof, and the standard of proof beyond a reasonable doubt, in addition to CALCRIM No. 200, which cautioned the jurors: "Pay careful attention to all of these instructions and consider them together . . . . [¶] . . . Some of these instructions may not apply depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the fact." These instructions ensured that the flight instruction did not undermine the presumption of innocence or lower the prosecution's burden to prove each element of each offense beyond a reasonable doubt.

In sum, we reject appellant's argument that CALCRIM No. 372 improperly presumed the commission of a robbery and his guilt.

*Cumulative Error*

Appellant argues that the prosecution benefitted from four instructional errors relating to the force element of the offense. He asserts that if this court deems none of these errors to be sufficient standing alone, then we should reverse this case based on cumulative error.

Reversal based on cumulative error is required only if a high number of instances of error occurring at trial create a strong possibility that "the aggregate prejudicial effect of such errors was greater than the sum of the prejudice of each error standing alone." (*People v. Hill* (1998) 17 Cal.4th 800, 845.) For instance, in *Hill* at pages 844 through 847, the court concluded that the cumulative impact of constant and outrageous

13

misconduct by the prosecutor and several legal errors occurring at trial "created a negative synergistic effect, rendering the degree of overall unfairness to defendant more than that flowing from the sum of the individual errors." (*Id*. at p. 847.)

Certainly, " '[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.' [Citation.]" (*People v*. *Cunningham* (2001) 25 Cal.4th 926, 1009.) The combined effects of multiple errors may indeed render a trial fundamentally unfair. (See *People v*. *Cuccia* (2002) 97 Cal.App.4th 785, 795.) However, since we have found none of appellant's claims of error meritorious and/or prejudicial, a cumulative error argument cannot be sustained. No serious errors occurred, which, whether viewed individually or in combination, could possibly have affected the jury's verdict. (*People v*. *Martinez* (2003) 31 Cal.4th 673, 704; *People v. Valdez* (2004) 32 Cal.4th 73, 128.) Simply put, since we have found no substantial error in any respect, appellant's claim of cumulative prejudicial error must be rejected. (*People v. Butler* (2009) 46 Cal.4th 847, 885.) Appellant was entitled to a fair trial, not a perfect one. (*People v*. *Bradford* (1997) 14 Cal.4th 1005, 1057.)

*Presentence Custody Credits*

The court awarded appellant 661 actual days of presentence custody credits and awarded only 99 days of conduct credits pursuant to section 2933.1, subdivision (c).

Appellant was arrested in this case on October 29, 2010. At the time, appellant was on active parole with an outstanding warrant for absconding. According to the probation officer's report, on November 15, 2010, a *Morrissey* hearing[8] was held at which appellant was found responsible for absconding, cutting off his GPS device, and failing to register as a sex offender. Appellant was given a 12-month sentence and his

---

[8]     *Morrissey v*. *Brewer* (1972) 408 U.S. 471.

scheduled release date was October 29, 2011. Appellant was sentenced on August 20, 2013, in this case.

Appellant claims that he is entitled to one day of custody credit for October 29, 2011, the day he was released from custody on his parole revocation sentence. He argues that the period from his parole revocation release date of October 29, 2011, to the date of his sentencing on August 20, 2013, is 662 actual days.

Respondent points out that a prisoner's release date constitutes a day of custody toward that period of confinement and not against a subsequent period of confinement.

Anyone convicted of a felony is entitled to credit against his term of imprisonment for time spent in custody prior to sentencing. (§ 2900.5, subd. (a).)

However, as the Supreme Court explained in *People v. Bruner* (1995) 9 Cal.4th 1178, 1191, "[A] prisoner is not entitled to credit for presentence confinement unless he shows that the conduct [that] led to his conviction was the sole reason for his loss of liberty during the presentence period." Appellant's sentence may not be credited with presentence custody time attributable to a parole or probation revocation based in part upon *different* criminal conduct. (*Id.* at p. 1191.) In *Bruner,* the Supreme Court concluded, "[W]here a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was . . . a 'but for' cause of the earlier restraint." (*Id.* at pp. 1193-1194.) The burden is on the accused to establish entitlement to presentence custody credit. (*Id.* at p. 1194.)

On the day that appellant was released from his parole revocation term—October 29, 2011, he remained in custody pending resolution of the criminal charges in this case. In effect, appellant was in custody on October 29, 2011, for both his parole revocation term and the new robbery case; he was not released from parole custody and rearrested for the new robbery case. Thus, under the authority of *Bruner*, "such custody may not be

15

credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct [that] underlies the term to be credited was . . . a 'but for' cause of the earlier restraint." (*People v. Bruner, supra*, 9 Cal.4th at pp. 1193-1194.) It was not until October 30, 2011, that appellant was in custody solely on his new robbery case. Accordingly, the trial court properly calculated appellant's credit for actual days in custody starting on October 30, 2011.

*Disposition*

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.