Filed 9/30/15  P. v. Alvarenga CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANA ALVARENGA,<br><br>    Defendant and Appellant. | B253826<br><br>(Los Angeles County<br>Super. Ct. No. BA399320) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Richard S. Kemalyan, Judge. Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jamie L. Fuster, Supervising Deputy Attorney General, and Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

_____

Ana Alvarenga appeals from the judgment entered following a jury trial in which she was convicted of second degree murder in violation of Penal Code section 187, subdivision (a) and personal use of a dangerous and deadly weapon in the commission of the offense within the meaning of section 12022, subdivision (b)(1).[1]  She was sentenced to 15 years to life for second degree murder, plus one year for the weapon use, for a total of 16 years to life in state prison.

Appellant contends (1) the trial court's refusal to instruct on involuntary manslaughter requires reversal; (2) the failure to instruct on gross vehicular manslaughter while intoxicated violated her constitutional rights; (3) CALJIC No. 3.72, pertaining to a defendant's flight, is unconstitutional, and the trial court erred in giving CALJIC No. 3.72, or any flight instruction in this case; (4) the trial court erred in refusing to instruct that assault with a deadly weapon could be found as a lesser included offense of murder; (6) numerous instances of prosecutorial misconduct require reversal; (7) the trial court abused its discretion by denying appellant's request for juror contact information; and cumulative error resulted in a violation of appellant's constitutional rights, causing a miscarriage of justice which requires reversal.  We disagree and affirm.

## FACTUAL BACKGROUND

In the early morning hours of September 27, 2009, appellant and her live-in boyfriend, Cesar Pena, left a nightclub driving appellant's 1998 Mitsubishi Montero.  At 1:38 a.m., during the ride home, appellant called 911 and accused Pena of threatening her. Appellant ended the call after less than two minutes.

Between 1:50 a.m. and 1:55 a.m. that night, witnesses spotted a body near the Lorena Street off-ramp of the 60 Freeway and called 911.  Emergency personnel arrived at the scene minutes later to find Pena dead.  His pelvis was broken, and he had suffered extensive abrasions to his head and body.  His scalp was stuck to the sound wall on the side of the freeway, and his blood was on the wall, the guard rail, and the ground.  A

---

[1] Undesignated statutory references are to the Penal Code.

2

corner of the right headlight later found to belong to the Montero was on the ground with Pena's blood on it.

An El Salvador identification card in the name of Ana Alvarenga was recovered from Pena's shirt pocket, and a cell phone was found on the ground near his body.

Approximately 2:00 a.m. that night, Maria Trujillo, the owner of the apartment appellant shared with Pena, was awakened by footsteps outside her bedroom window. She looked outside and saw appellant walking in front of the house, speaking on a phone as she appeared to inspect the Montero, which was parked on the street. Trujillo observed damage to the right front side of the Montero. After a few minutes, appellant drove away in the Montero. Video recovered from nearby security cameras showed the Montero with a broken headlight being driven after Pena's body had been found at 1:48 a.m., 2:01 a.m., and 2:18 a.m.

Maira Martinez, appellant's close friend, received a phone call from appellant around 2:00 a.m. on September 27. Appellant told Martinez that she and Pena had argued and he had struck her while they were in the car. Pena was angry because appellant had urinated in the car. Appellant told Martinez that when Pena got out and started walking, she drove the car and accidentally struck him.

Approximately 2:20 a.m., while police were still investigating the scene, appellant called Pena's cell phone. When appellant would not identify herself, California Highway Patrol (CHP) Officer Fabio Ibarra hung up. Appellant called again a few minutes later, identifying herself as Pena's girlfriend, but refusing to give her name until Officer Ibarra read it from the identification card found in Pena's pocket. Appellant told the officer that she and Pena had been drinking at a nightclub that night and got into an argument. They left and drove home, where they continued to argue. Pena went outside, and when appellant eventually looked for him, he was gone.

Another CHP officer, Paul Solorzano, also answered a call from appellant on Pena's cell phone. Appellant told Officer Solorzano she and Pena had been at a nightclub until around 1:00 a.m., and she had called 911 to report that Pena had hit her.

3

On the morning of September 27, appellant called Pena's sister, Flor Pena, in Arkansas. Appellant was crying and told her Pena had died. Appellant explained that she and Pena had gone out the night before and she had gotten drunk. They argued, and Pena drove them home. When they reached their house, Pena told appellant to get out of the car. Appellant went inside, but 30 minutes later when Pena had still not come in, she called Pena's phone. The phone was answered by an officer. When she called again, another officer told her Pena was dead.

When Flor Pena's daughter, Maritza Lopez, called appellant later that morning, appellant told her she and Pena had argued at the club and drove home together. Pena had left her at home, and she did not know where the Montero was. Another sister of Pena's, Ruth Garcia, called appellant later on September 27. Appellant said she and Pena had left the club around 1:30 a.m. Pena drove, and they argued in the car on the way home. Appellant went inside, and when she looked outside 30 minutes later, both Pena and the Montero were gone. When Garcia spoke to appellant again, appellant told her that she and Pena had argued, Pena got out of the car on the freeway, and appellant had simply driven away.

Around 9:15 a.m. on September 27, Pena's niece, Selina Salazar, and her boyfriend went to appellant's apartment to collect some of Pena's belongings. They arrived to find appellant hurriedly packing. Appellant told Salazar she was going to stay with family in Washington, D.C. The Montero was not at the apartment. Appellant explained that Pena had dropped her off at the apartment the night before and had driven away.

On the evening of September 27, Officer Ibarra called appellant again. She refused to say where she was. She told the officer that Pena had taken her keys and drove away in the Montero.

During a phone call on October 8, appellant told CHP Officer Javier Dominguez that when she and Pena reached their apartment, Pena pushed her, and appellant called 911. Appellant went inside and thought Pena left in the Montero.

4

On October 8, 2009, the Montero was found abandoned on a mountain road near Magic Mountain. It appeared to have been set on fire and was teetering on the edge of a cliff.

Flight information indicated that appellant flew from Mexico to El Salvador on September 28, 2009. Appellant received a traffic citation in California in August 2010 and was arrested in Los Angeles County on June 27, 2012.

## DISCUSSION

### I. The Trial Court Did Not Err in Refusing Appellant's Request for Instruction on Involuntary Manslaughter

Appellant contends the trial court erred in refusing to instruct on involuntary manslaughter as a lesser included offense of murder, and its failure to so instruct the jury amounted to federal constitutional error. We disagree.

""""[U]nder California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser."""" (*People v. Sanchez* (2001) 24 Cal.4th 983, 988 (*Sanchez*), overruled on another point in *People v. Reed* (2006) 38 Cal.4th 1224, 1228–1229, and quoting *People v. Breverman* (1998) 19 Cal.4th 142, 154, fn. 5.)

"Voluntary and involuntary manslaughter are [both] lesser included offenses of murder." (*People v. Thomas* (2012) 53 Cal.4th 771, 813; *People v. Burroughs* (1984) 35 Cal.3d 824, 834 (*Burroughs*), disapproved on other grounds in *People v. Blakeley* (2000) 23 Cal.4th 82.) Involuntary manslaughter is statutorily defined as "the unlawful killing of a human being without malice" during "the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b).) However, the statutory definition contains an important exception, specifically stating that involuntary manslaughter is inapplicable to an unlawful homicide "committed in the driving of a vehicle." (§ 192, subd. (b).)

5

Notwithstanding this unambiguous exclusion of vehicular homicide from the definition of involuntary manslaughter, appellant maintains that the refusal of the instruction requires reversal in this case based on a nonstatutory form of the offense, as defined by the Supreme Court in *Burroughs*. (*Burroughs*, *supra*, 35 Cal.3d at p. 835 ["the only logically permissible construction of section 192 is that an unintentional homicide committed in the course of a noninherently dangerous felony may properly support a conviction of involuntary manslaughter, if that felony is committed without due caution and circumspection"].)

Not only does appellant ignore the plain language of the statute, which clearly states that involuntary manslaughter cannot be charged as a matter of law in cases involving vehicular homicide, but none of the cases cited by appellant supports an exception to this statutory exclusion. In interpreting a statute, our principal aim is to discern and give effect to the underlying purpose of the law. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) "Statutory construction begins with the plain, commonsense meaning of the words in the statute, '"because it is generally the most reliable indicator of legislative intent and purpose."' [Citation.]" (*People v. Manzo* (2012) 53 Cal.4th 880, 885.) In determining a statute's meaning and legislative intent, a court should give meaning to every word if possible, and avoid a construction that renders any word or phrase surplusage. (*Ratzlaf v. United States* (1994) 510 U.S. 135, 140–141 [114 S.Ct. 655]; *Reno v. Baird* (1998) 18 Cal.4th 640, 658.)

Viewing section 192 as a whole, it becomes apparent that subdivision (c) "creates a third type of manslaughter, designated 'vehicular,' " while the limitation set forth in subdivision (b) "makes the ordinary definition of involuntary manslaughter inapplicable to acts committed in driving a vehicle." (1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against the Person, § 262, p. 1108.)

In this case there is no dispute that appellant committed the offense while driving a motor vehicle. Therefore, based on the plain meaning of the language of section 192, subdivision (b), appellant could not be charged with or convicted of involuntary manslaughter and had no right to have the jury instructed on that theory.

6

**II.  There Was No Error in the Trial Court's Refusal to Instruct on the Lesser Related Offense of Gross Vehicular Manslaughter While Intoxicated**

Appellant acknowledges that the California Supreme Court has held that gross vehicular manslaughter while intoxicated is not a lesser included offense of second degree murder (*Sanchez*, *supra*, 24 Cal.4th at p. 991), and that a defendant does not have a unilateral right to instructions on lesser related offenses (*People v. Birks* (1998) 19 Cal.4th 108, 136).  Nevertheless, in order to preserve the issue for a petition for review (*O'Sullivan v. Boerckel* (1999) 526 U.S. 838 [119 S.Ct. 1728]), appellant contends that the trial court's failure to instruct the jury on the lesser related offense of gross vehicular manslaughter while intoxicated violated her federal constitutional rights to due process and to present a defense.

As appellant recognizes, this court is bound by the California Supreme Court's precedent.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

**III.  The Trial Court Did Not Err in Instructing the Jury on Flight Pursuant to CALCRIM No. 372**

Over appellant's objection, the court instructed the jury on a defendant's flight, as set forth in CALCRIM No. 372.[2]  Appellant contends the court erred in so instructing the jury for two reasons:  (1) CALCRIM No. 372 amounts to a directed verdict because it tells the jury a crime was committed, thereby eliminating the presumption of innocence and the prosecution's burden of proof in violation of appellant's  due process and jury trial rights; and (2) there was insufficient evidence of flight to support the giving of this instruction.  We disagree with both assertions.

---

[2] The jury was instructed: "If the defendant fled or tried to flee immediately after the crime was committed or after she was accused of committing the crime, that conduct may show that she was aware of her guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

7

Appellant claims the flight instruction undermines the presumption of innocence, relieves the prosecution of its burden to prove the offense beyond a reasonable doubt, and deprives the defendant of a jury verdict because the instruction "presumes 'the crime was committed' and from there tells the jury what inferences it may draw from the defendant's conduct." Appellant parses the first sentence of the instruction, asserting that the conditional "if" applies only to whether "the defendant fled or tried to flee," while the permissive term "may" applies only to the inference to be drawn from such flight. Appellant then concludes that because "if" and "may" do not in any way qualify "after the crime was committed," the instruction impermissibly directs the jury to assume this ultimate fact.

Appellant acknowledges that her constitutional attack on the flight instruction was rejected in *People v. Paysinger* (2009) 174 Cal.App.4th 26 (*Paysinger*), but maintains that *Paysinger* was wrongly decided and urges us not to follow it. We decline appellant's invitation.

In reviewing the instruction at issue, we examine the jury instructions as a whole in light of the entire trial record to determine whether it was reasonably likely the jury understood the challenged instruction to mean it was appellant's burden to establish her innocence. (*People v. Frye* (1998) 18 Cal.4th 894, 958, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)

Viewing CALCRIM No. 372 in this light, *Paysinger* rejected the very argument appellant makes here. The court explained:

"Even viewing the instruction in isolation, the word 'if' in the operative clause— 'If the defendant fled or tried to flee immediately after the crime was committed'—does not logically modify *only* the phrase 'the defendant fled or tried to flee,' as defendant contends. Rather, 'if' modifies the entire phrase, including the words 'after the crime was committed.' Thus, it is highly unlikely a reasonable juror would have understood the instruction as dictating that 'the crime was committed.' (See *People v. Daener* (1950) 96 Cal.App.2d 827, 833 [flight instruction 'did not presuppose the commission of the crime charged'].)

8

"This conclusion is supported by the other instructions, which told the jury the following things (among others): (1) 'You must decide what the facts are'; (2) 'It is up to all of you and you alone to decide what happened'; (3) 'A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt[ ]'; and (4) 'Remember that you may not convict a defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant's guilt[ ] of that crime has been proved beyond a reasonable doubt.'" (*Paysinger*, *supra*, 174 Cal.App.4th at p. 30.)

Appellant points out that it is the jury's, not the court's, understanding of the meaning of the language which determines whether an instruction is constitutional, and contends that because *Paysinger* failed to assess whether a reasonable jury could have been misled, its analysis must be rejected. Contrary to appellant's argument, however, it would have been unreasonable for the jury to read the first sentence of the instruction in isolation and conclude the phrase required the jury to find appellant had committed a crime. As *Paysinger* observed, such an interpretation would have meant the jury ignored the other instructions as well as the admonition in CALCRIM No. 372 that "evidence that the defendant fled or tried to flee cannot prove guilt by itself."

"A jury is presumed to follow its instructions." (*Weeks v. Angelone* (2000) 528 U.S. 225, 234 [120 S.Ct. 727].) There is no reason to suspect the jury in this case did otherwise.

Appellant's further contention that the instruction was unsupported by substantial evidence is without merit. "'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt."' [Citations.] Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.' [Citations.] To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer

9

a consciousness of guilt from the evidence.  [Citation.]" (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.)

Here, there was abundant evidence to support the flight instruction.  There was substantial evidence that appellant knew she had hit Pena with the Montero for which there would be serious legal consequences:  when Pena was struck from behind, his body flew up onto the hood of the vehicle and rolled to the right, where it was pinned and dragged between the vehicle and the sound wall and then the guard rail for 85 to 110 feet.  There was no evidence appellant stopped to render aid; to the contrary, she fled the scene, leaving Pena lying on the ground.  The very next day, she moved out of the apartment she had shared with Pena, but would not tell anyone her exact location.  Eventually, she fled the country.  All the while, she gave false statements to the police and Pena's relatives regarding the events surrounding Pena's death and when she had last seen him.

**IV.    There Was No Error in the Trial Court's Refusal to Instruct that Assault With a Deadly Weapon Is a Lesser Included Offense of Murder**

Appellant contends that the trial court was required to instruct that assault with a deadly weapon is a lesser included offense of murder.  Relying on *People v. Lewis* (1960) 186 Cal.App.2d 585, 600 (*Lewis*), appellant asserts that when a weapon use allegation is included in a prosecution for murder, assault with a deadly weapon is necessarily a lesser included offense.  We must reject appellant's argument as contrary to the Supreme Court's holdings in *Sanchez*, *supra*, 24 Cal.4th at page 988, that assault with a deadly weapon is not a lesser included offense of murder, and in *People v. Sloan* (2007) 42 Cal.4th 110, 114, that enhancements may not be considered in identifying lesser included offenses.  (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455.)

*Lewis* is not to the contrary.  There, the court opined that a lesser crime, not necessarily included in the statutory definition of the crime charged, may nevertheless be included in the charged offense if the indictment includes all the elements of the lesser crime in pleading the greater.  "Thus, if the indictment in this case had charged murder with a hatchet, then assault with a deadly weapon, or with means likely to cause great bodily harm would be necessarily included offenses.  The indictment here did not charge

10

murder by this means, but merely the statutory crime in general terms." (*Lewis*, *supra*, 186 Cal.App.2d at p. 600.) Therefore, the court found no error in the trial court's refusal to give the requested instruction on the lesser included offense.

So it is here. Use of a deadly weapon (a vehicle) is not an element of the crime of murder with which appellant was charged, and was not charged as such in the information. Rather, use of a deadly weapon was charged as an enhancement within the meaning of section 12022, subdivision (b)(1). Based on "the long-standing rule that enhancements may not be considered as part of an accusatory pleading for purposes of identifying lesser included offenses" (*People v. Sloan*, *supra*, 42 Cal.4th at p. 114), the information cannot be read to charge murder with a deadly and dangerous weapon so as to make assault with a deadly weapon a necessarily included offense.

## V. To the Extent Appellant's Claims of Prosecutorial Misconduct Are Not Forfeited, They Lack Merit

Appellant cites multiple instances of alleged prosecutorial misconduct that she asserts mandate reversal in this case. To the extent appellant's claims are not forfeited by a failure to object or seek any kind of admonition, we conclude the prosecutor's conduct did not rise to a level of misconduct that warrants reversal.

"'In general, a prosecutor commits misconduct by the use of deceptive or reprehensible methods to persuade either the court or the jury.' [Citation.] 'When, as here, the point focuses on comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' [Citation.]" (*People v. Thomas*, *supra*, 53 Cal.4th at p. 797; see also *People v. Centeno* (2014) 60 Cal.4th 659, 666.) In reviewing a claim of misconduct, "we must view the [prosecutor's] statements in the context of the argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)

Claims of misconduct may be forfeited where the defendant has failed to object and request an admonition from the trial court. (*People v. Centeno*, *supra*, 60 Cal.4th at p. 674; *People v. Brown* (2003) 31 Cal.4th 518, 553 ["To preserve a claim of prosecutorial misconduct for appeal, a criminal defendant must make a timely objection,

11

make known the basis of his objection, and ask the trial court to admonish the jury"]; see also *People v. Dennis*, *supra*, 17 Cal.4th at p. 521.) "As a general rule, "'[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety."' [Citations.] The defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct. [Citation.]" (*People v. Centeno*, *supra*, 60 Cal.4th at p. 674; see also *People v. Hill* (1998) 17 Cal.4th 800, 820.)

During the examination of the prosecution's accident reconstruction expert, the prosecutor inartfully attempted to elicit an opinion about whether a different type of collision would have resulted in the same injuries. Defense counsel objected on the grounds that the questions constituted an improper hypothetical, assumed facts not in evidence, and lacked foundation. The trial court sustained the objections to all but one question, which the court allowed the witness to answer.[3] Appellant now characterizes this series of questions to which the court sustained appellant's objections as a deliberate attempt to elicit inadmissible expert testimony and to "smuggle into trial" an inference regarding appellant's intent, constituting misconduct. None of appellant's objections to these questions was made on grounds of misconduct, nor did appellant seek an admonition regarding misconduct. Moreover, none of appellant's objections even hinted

---

[3] The court overruled the defense objection to the following question:

"[Prosecutor]: Do you have an opinion as to whether—let me ask you another hypothetical. Assuming that a pedestrian is hit from behind, is struck from behind by a 1998 Mitsubishi Montero, he's on foot, the Montero is moving at whatever speed. I want you to assume he was hit and not dragged across the sound wall, would you expect and not crushed between the sound wall and the vehicle, would you expect this pedestrian to have the same injuries that you saw Cesar Pena have?"

"[Witness]: I would expect to have the lower extreme and the hip fractures. However, the upper body scraping and abrasions they would have not been sustained. Some of the more head trauma and internal injuries would still be produced because of the force of the impact with the vehicle."

that the questions were improper because they impermissibly created an inference regarding appellant's intent.[4]  Accordingly, appellant's misconduct claim based on this series of questions is forfeited on appeal.  (*People v. Brown*, *supra*, 31 Cal.4th at p. 553.)

For her next claim of prosecutorial misconduct, appellant cites remarks by the prosecutor in argument that appellant "veered her car to the right where Mr. Pena was walking," and, "We know from the evidence that she's veering right because she leaves tire marks on the right side of the freeway."  Defense counsel objected to the first of these statements on the ground that it misstated the evidence, prompting the court to admonish the jurors that they were the "ultimate arbiters" of the evidence.  Appellant made no objection to the latter statement.[5] Appellant also cites the prosecutor's argument which drew a defense objection that "Pedestrians get hit by cars, you heard Officer Isbister tell you, and sometimes they survive it.  Sometimes they get broken legs, paraplegic, other injuries. This is not consistent in either of their opinions with accident."

Appellant asserts these statements misstated the evidence and thus constituted misconduct.  We disagree.

"""'[A] prosecutor is given wide latitude during argument.  The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.'"'  (*People v. Ward* (2005) 36 Cal.4th 186, 215.)"  (*People v. Bonilla*, *supra*, 41 Cal.4th at pp. 336–337.)  The challenged statements here fell well within this wide latitude.  The prosecutor's statements were a fair interpretation of the experts' testimony that the Montero was angled to the right, continued to be angled to the right after the initial collision, Pena

---

[4] Indeed, it appears that none of the questions appellant cites even remotely concerned appellant's intent.

[5] Appellant's failure to object to the prosecutor's second statement forfeits the misconduct claim as to that statement.  (*People v. Centeno*, *supra*, 60 Cal.4th at p. 674.) There is no reason to conclude an objection to the second statement would have been futile since the objection to the first statement resulted in the trial court admonishing the jury. (See *People v. Hill*, *supra*, 17 Cal.4th at p. 820.)

sustained additional injuries from being dragged against the wall and rail, and there was no evidence the driver attempted to stop or turn away after the initial impact.

Appellant further contends that the prosecutor improperly attempted to shift the burden to the defense by arguing that the presumption of innocence lasts only "until you hear all the evidence and now you've done that, and now it's time for her to be held accountable."[6] Asserting that the argument improperly suggested that the presumption of innocence did not carry over into the jury's deliberations, appellant maintains the argument constituted misconduct. We disagree.

The prosecutor's remarks about the presumption of innocence were nothing more than an assertion that the prosecution had fulfilled its burden to rebut the presumption of innocence which appellant had enjoyed throughout the trial. The prosecutor's statement did not amount to a misstatement of the law, nor does there appear any reasonable likelihood the prosecutor's statement would have misled the jury as to the burden of proof. (See *People v. Centeno*, *supra*, 60 Cal.4th at p. 674; *People v. Frye*, *supra*, 18 Cal.4th at p. 970.)

Finally, appellant alleges prosecutorial misconduct on the basis of remarks about common defense tactics to confuse and distract the jury, exaggerate the presumption of innocence and burden of proof beyond a reasonable doubt,[7] and argue that the evidence is circumstantial. Appellant voiced no objection to the prosecutor's characterization of the defense strategy as a distraction, and the claim is forfeited. (*People v. Centeno*, *supra*, 60 Cal.4th at p. 674; *People v. Edwards* (2013) 57 Cal.4th 658, 740, rehg. den. Nov. 13, 2013, cert. den. *sub nom. Edwards v. California* (2014) ___ U.S. ___ [134 S.Ct. 2662].) Additionally, appellant's claim lacks merit.

"'A prosecutor commits misconduct if he or she attacks the integrity of defense counsel, or casts aspersions on defense counsel.' [Citations.] 'In evaluating a claim of

---

[6] The trial court overruled appellant's objection that the argument misstated the law.

[7] This statement drew an objection from defense counsel, prompting the court to admonish the prosecutor to "move forward."

14

such misconduct, we determine whether the prosecutor's comments were a fair response to defense counsel's remarks' [citation], and whether there is a reasonable likelihood the jury construed the remarks in an objectionable fashion [citation]." (*People v. Edwards*, *supra*, 57 Cal.4th at p. 738.)

There is no reasonable likelihood the jury construed the prosecutor's comments that defense counsel was seeking to "distract" the jury from the evidence as an attack on counsel's integrity. (See *People v. Edwards*, *supra*, 57 Cal.4th at pp. 738–740.)

## VI. The Trial Court Did Not Abuse Its Discretion in Denying Appellant's Request for the Release of Confidential Juror Contact Information

Appellant contends the trial court abused its discretion when it denied her request for the release of confidential juror contact information so that she could investigate her claim of juror misconduct. We find no abuse of discretion in the trial court's refusal of appellant's request.

Following the verdict in this case, appellant filed a motion seeking juror contact information pursuant to Code of Civil Procedure sections 206, subdivision (g), and 237, subdivision (b). In the unsworn declaration supporting the petition, defense counsel stated that in the evening of the day the verdict was returned, Juror No. 4 "advised counsel that jurors had discussed a lack of evidence being presented by the defense and that there was a great deal of pressure by other jurors to reach a verdict." Defense counsel then communicated with the juror, who "repeated her concerns about deliberations mentioning that a discussion about the costs associated to a lack of a verdict and the punishment or lack thereof of the defendant." The juror reiterated her concerns to the defense investigator, specifically recalling "that one juror actually brought up the possibility of the defendant walking if there was a hung jury." Although the juror allegedly told the investigator she did not consider this to be a discussion about punishment, she did mention that "there was a discussion about potential retrial and the related costs of a retrial."

Attached to appellant's petition was a copy of the e-mail Juror No. 4 purportedly sent to defense counsel in which she stated that although she had not been directly

15

pressured or influenced, she had "felt an indirect pressure to come to a unanimous decision," and regretted making "a bad decision." An unsigned report, apparently prepared by the defense investigator, was also included. The report stated that the juror had said "there were no comments made by the jurors about the Defendant not testifying." It was further reported that one of the other jurors (Juror No. 4 could not recall which juror) "made a comment about the possibility of the Defendant walking if there was a hung jury. The juror said that it would be the states [*sic*] decision whether there would be a retrial, and what would the cost be for a retrial? There were no further comments about the aforementioned because the foreperson got the juror back on track. The foreperson told the juror that they were not allowed to discuss the issues of a retrial and cost of a retrial." Finally, the report stated that Juror No. 4 had said "there was no discussion about punishment in coming to a verdict."

The trial court denied the petition on the grounds that appellant had failed to make an adequate showing of good cause for the release of the juror contact information and had not established a prima facie case of juror misconduct. The court pointed out there was no affidavit from Juror No. 4, and the investigator's report specifically stated that there had been no discussion about punishment. The court further found there was no good cause shown for release of the juror information based on the fleeting reference to a retrial in the event of a hung jury since the foreperson had gotten the juror back on track.

Code of Civil Procedure section 237, subdivision (a)(2), requires that the court's record of personal juror identifying information be sealed upon the recording of the jury's verdict in a criminal jury proceeding. A criminal defendant seeking disclosure of juror contact information must file a petition "supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information." (Code Civ. Proc., § 237, subd. (b); § 206, subd. (g).)

"Absent a showing of good cause for the release of the information, the public interest in the integrity of the jury system and the jurors' right to privacy outweighs the defendant's interest in disclosure. [Citations.]" (*People v. McNally* (2015) 236 Cal.App.4th 1419, 1430.)

16

Appellant presented only inadmissible hearsay in support of her petition. However, "'Normally, hearsay is not sufficient to trigger the court's duty to make further inquiries into a claim of juror misconduct.' [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 605.) Moreover, "Our Supreme Court has cautioned that requests to access confidential juror records "'should not be used as a 'fishing expedition' to search for possible misconduct . . . .'" [Citation.]" (*People v. McNally*, *supra*, 236 Cal.App.4th at p. 1431; *People v. Avila*, *supra*, 38 Cal.4th at p. 604.)

On this record, we find no abuse of discretion in the trial court's denial of appellant's request for disclosure of confidential juror contact information.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.


17