[No. C059448. Third Dist. May 21, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
TACARE DESEAN PAYSINGER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts IB, II and III of the Discussion.

**COUNSEL**

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROBIE, J.**—Convicted of second degree robbery and placed on five years' probation, defendant Tacare Desean Paysinger appeals, arguing (1) the flight instruction the trial court gave (CALCRIM No. 372) was unconstitutional and not supported by substantial evidence; (2) his conviction must be reduced to grand theft because that was all the actual perpetrator (codefendant Pham)

was convicted of; and (3) the weapons and gang conditions of his probation are unconstitutionally vague and/or overbroad.

In the published portion of our opinion, we reject defendant's challenge to the constitutionality of CALCRIM No. 372. In the unpublished portion of our opinion, we agree with some of defendant's arguments regarding his probation conditions and will modify those conditions accordingly; otherwise, we reject defendant's arguments and will therefore affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

On a late afternoon in September 2007, Mary Harris was in her car, which was parked near the Gottschalks store at El Camino and Watt Avenues in Sacramento. As she was waiting for a call on her cell phone, she saw two men about 20 feet away "kind of wandering in the general direction of [her] car." One of the men was an African-American, about 17 or 18 years old, wearing a dark "hoodie." The African-American man moved toward the passenger side of her car while she lost sight of the other man. As she reached to start the car, a man whom Harris believed to be the other man she had seen walking toward her car appeared at her window with his hand under his shirt and said, "give me your purse, bitch." Harris "kind of froze for just a second," and the man said, "give me your [purse] or I'll kill you," as he tapped a gun on the car window. Harris handed him her purse, and he turned and ran back in the direction from which he had come.

A witness in a nearby pickup truck saw the two men walking together, then heard, faintly, "give me your purse." He then saw two men running away, one holding a purse.

Another witness saw defendant, wearing a dark hooded sweatshirt, walking in the parking lot. She later saw defendant and another man, whom she identified as codefendant Pham, running; defendant was holding a purse, which he shoved under his shirt. They ran around the other side of a van, and when the van drove away, the men were gone, so she assumed they had jumped inside. As the witness was later driving away from the mall, she spotted the van again. The witness called 911 and followed the van. As she did so, she saw defendant and Pham pulling items out of the purse. The witness continued following the van on El Camino Avenue and then on

Fulton Avenue until the van pulled into a parking lot and was surrounded by police cars. Two people, one of whom was a Black male wearing a black hooded sweatshirt, jumped out of the van and ran toward a nearby business called Goore's.

An employee of Goore's saw a person with a black "hoodie" in the store. After hearing from a coworker that the person had gone into the bathroom, the employee checked the bathroom and found the hoodie hidden under the trash bag in the trash can.

Upon receiving information that a Black male had left Goore's and gone to a nearby Burger King, the police found defendant there and arrested him.

Defendant, Pham, and another individual were charged with robbery, and it was alleged that a handgun was used in the commission of the crime. Defendant and Pham were tried together using separate juries. Pham's jury found him not guilty of robbery but guilty of the lesser offense of grand theft. The jury also found the firearm allegation was not true. Defendant's jury found him guilty of second degree robbery and found the firearm allegation was true. The trial court suspended imposition of sentence and placed defendant on five years' probation subject to various conditions. Defendant filed a timely notice of appeal.

DISCUSSION

I

*CALCRIM No. 372—The Flight Instruction*

The trial court instructed the jury with CALCRIM No. 372, as follows: "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. [¶] If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. [¶] However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

On appeal, defendant contends "CALCRIM No. 372 is unconstitutional because it deprives a defendant of the presumption of innocence and the

rights to a jury trial and proof beyond a reasonable doubt." He also contends the instruction should not have been given because there was no substantial evidence to support it. We reject both arguments.

A

*Constitutionality of CALCRIM No. 372*

Defendant first contends CALCRIM No. 372 "undermines the presumption of innocence, relieves the prosecution of the burden to prove the offense beyond a reasonable doubt and deprives the defendant of a jury verdict . . . because the instruction presumes 'the crime was committed.' " According to defendant, "[t]he conditional term 'if' applies only to the fact of flight, and the permissive term 'may' applies only to the inference to be drawn from the fact. These terms do not apply to the glaring assertion that 'the crime was committed.' "

On review, we examine the jury instructions as a whole, in light of the trial record, to determine whether it is reasonably likely the jury understood the challenged instruction in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt. (See *People v. Frye* (1998) 18 Cal.4th 894, 958 [77 Cal.Rptr.2d 25, 959 P.2d 183].)

Viewing CALCRIM No. 372 in this light, we reject defendant's argument. Even viewing the instruction in isolation, the word "if" in the operative clause—"If the defendant fled or tried to flee immediately after the crime was committed"—does not logically modify *only* the phrase "the defendant fled or tried to flee," as defendant contends. Rather, "if" modifies the entire phrase, including the words "after the crime was committed." Thus, it is highly unlikely a reasonable juror would have understood the instruction as dictating that "the crime was committed." (See *People v. Daener* (1950) 96 Cal.App.2d 827, 833 [216 P.2d 511] [flight instruction "did not presuppose the commission of the crime charged"].)

This conclusion is supported by the other instructions, which told the jury the following things (among others): (1) "You must decide what the facts are"; (2) "It is up to all of you and you alone to decide what happened"; (3) "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt[]"; and (4) "Remember that you may not convict a defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant's guilt[] of that crime has been proved beyond a reasonable doubt."

■ Also, the trial record demonstrates that there was no real question about whether a crime was committed when Harris's purse was taken. The only real question in defendant's case was whether defendant was a participant in the taking. Under these circumstances, we conclude it is not reasonably likely the jury misunderstood the phrase "the crime was committed" in CALCRIM No. 372 in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt.

Defendant argues at some length about how the language of CALCRIM No. 372 differs from the language in Penal Code section 1127c, which provides for the giving of a flight instruction when appropriate.[1] The purpose of this exercise is not entirely clear. Nevertheless, to the extent defendant intends to suggest the CALCRIM instruction is unconstitutional or otherwise unlawful because of these differences, we disagree.

Defendant first points out that CALCRIM No. 372 tells the jury that flight may show awareness of guilt before telling the jury that flight alone is not sufficient to prove guilt, while Penal Code section 1127c communicates those ideas in the opposite order. To the extent defendant suggests this difference makes the CALCRIM instruction constitutionally deficient because the first sentence of the instruction "strongly suggests . . . that evidence of flight is in fact sufficient to show guilt," we are not persuaded. The first sentence of CALCRIM No. 372 suggests no such thing, and in any event the final sentence of the instruction positively refutes any such suggestion. In reviewing an instruction for constitutionality, we do not view it in isolation from the other instructions the court gave and we certainly do not view one part of an instruction in isolation from another part. Viewed as a whole and in light of the other instructions, CALCRIM No. 372 is not unconstitutional.

■ Next, defendant complains that while Penal Code section 1127c "in no way tells the jury how it should interpret flight, if proved, nor what conclusion it may draw from the fact of flight," CALCRIM No. 372 "tells the jury flight may prove guilt." Defendant, however, makes no effort to explain why this difference is significant. It has long been accepted that if flight is significant at all, it is significant because it may reflect consciousness of guilt, which in turn tends to support a finding of guilt. (See, e.g., *People v.*

---

[1] Penal Code section 1127c reads as follows:

"In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.

"No further instruction on the subject of flight need be given."

*Hutchinson* (1969) 71 Cal.2d 342, 346 [78 Cal.Rptr. 196, 455 P.2d 132].) That CALCRIM No. 372 tells the jury this does not in any way make the instruction unconstitutional.

Finally, defendant complains that while Penal Code section 1127c "addresses flight 'after *the commission of a crime*,'" "CALCRIM No. 372 addresses flight 'after *the crime was committed*.'" By this argument, however, defendant simply repeats the contention that the CALCRIM instruction unconstitutionally presumes the crime was committed, which we have rejected already. Accordingly, we do not address the argument further.

In summary, defendant has failed to show any constitutional defect in the flight instruction given here.

B[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II, III[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The weapons condition on defendant's probation is modified as follows: "Defendant shall not own or possess any dangerous or deadly weapons nor remain in any building or vehicle where he knows any person has such a weapon, nor remain in the presence of any person he knows is armed with such a weapon."

The gang condition on defendant's probation is modified as follows: "Defendant shall not associate with any person whom he knows, or whom his probation officer informs him, is a gang member. Defendant shall not be in places frequented by persons whom he knows, or whom his probation officer informs him, are gang members. For purposes of this condition, the word 'gang' means a criminal street gang as defined in Penal Code section 186.22, subdivisions (e) and (f)."

---

[*]See footnote, *ante*, page 26.

As modified, the judgment is affirmed.

Sims, Acting P. J., and Butz, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 17, 2009, S174352.