Filed 11/20/14  P. v. Watts CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SHEMICK FERRER WATTS,<br><br>        Defendant and Appellant. | C073627<br><br>(Super. Ct. No. SF119582A) |

A jury found defendant Shemick Ferrer Watts guilty of attempted premeditated murder for repeatedly stabbing victim Steven H. in a Motel 6 parking lot after wrongly thinking the victim had repossessed his car.  Defendant raises three contentions on appeal:  (1) there was insufficient evidence he was the stabber; (2) the prosecutor committed misconduct when she "elicited evidence in violation of a ruling by the trial court"; and (3) the instruction on flight (CALCRIM No. 372) should not have been given.  We affirm the judgment, holding:  (1) the eyewitness identification from the victim and two witnesses was more than sufficient; (2) there was no misconduct because the

1

prosecutor did not violate the court order; and (3) the flight instruction was supported by the evidence and did not violate defendant's constitutional rights.

## FACTUAL AND PROCEDURAL BACKGROUND

The stabbing occurred in the late morning of October 18, 2011, at a Motel 6 parking lot in Stockton, some time after defendant's car had been repossessed from the parking lot. The victim was making trips back and forth to his car, getting ready to leave the motel after spending the night there with out-of-town family and friends. Defendant, who was wearing gold teeth (also referred to as a "gold grill" at trial), approached the victim and asked if he knew what had happened to his car. The victim, who had seen the repossession taking place, told defendant "it got repo'ed the night before." Defendant accused the victim of taking his car and tried to punch the victim in the face. The two started fighting, and defendant stabbed the victim six times.

The victim's brother's friends, Jonathan C. and Karen C., who were also staying at the motel, were in their car at the time of the stabbing. Jonathan C. identified defendant in court as the victim's assailant. Karen C. also identified defendant in court as the stabber. After defendant stabbed the victim, defendant went up to the C.'s car and asked Jonathan C., "Do you want some of this." The C.'s "pulled away." Defendant went down a little alley. The C.'s went looking for defendant, but they could not find him.

The victim identified defendant as the stabber two days after the attack, in a photographic six-person lineup prepared by Detective Charles Harris of the Stockton Police Department. The victim could not identify defendant in court as the stabber.

Defendant was arrested in February 2012. Six days later, Detective Harris went to see defendant in jail. Defendant "had gold teeth on the top portion of his mouth."

At trial, defendant testified that he was staying at Motel 6 on October 17, 2011, but he did not accuse anyone of taking his car or stab anybody at the motel.

2

DISCUSSION

I

*There Was Substantial Evidence Defendant Was The Stabber*

Defendant contends there was insufficient evidence to support his attempted murder conviction because the evidence failed to establish he was the stabber. He argues the evidence was insufficient because "[n]o prosecution witness identified [defendant as the stabber] both before and at trial" and "[t]hree of the four prosecution witnesses changed their position on identification . . . ."

Defendant's argument misapprehends our standard of review. It is not an appellate court's function to reweigh the evidence. "We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Here, there was substantial evidence defendant was the stabber. The victim identified defendant as the stabber two days after the attack. Jonathan C. identified defendant in court as the victim's assailant. And Karen C. identified defendant in court as the stabber. This evidence, individually or cumulatively, was substantial evidence that defendant was the stabber.

II

*Defendant's Claim Of Prosecutorial Misconduct Is A*
*Nonstarter Because Its Factual Premise Is Wrong*

Defendant contends the prosecutor committed misconduct when she "elicit[ed] evidence in violation of a ruling by the trial court." The evidence was exhibit 49, a booking photograph of defendant with his "gold grill." The factual premise of defendant's argument is wrong because the court's ruling did not prohibit the prosecutor from asking the witness about this evidence.

The facts are as follows: the prosecutor wanted to show the booking photograph of defendant with his "gold grill" to Detective Harris during trial. Out of the presence of the jury, defense counsel objected because "if [the prosecutor is] trying to introduce it as independent evidence of what [defendant] looked like on [the date of the stabbing], a year and a half later, I don't believe that there's a sufficient foundation for that purpose." The court stated that it was "inclined to agree," noting that the prosecutor has "not connected gold teeth to [defendant] in the trial yet." The court continued that the prosecutor "need[s] to put that evidence on . . . you need to lay a foundation, what the foundational evidence about his gold teeth at the time of his arrest, and then -- *at this point* I'm going to sustain the objection." (Italics added.)

The prosecutor then explained to the court that "the last part of [her] questioning with [the] detective is going to be the fact that he met . . . that once the defendant was arrested . . . the first thing [the detective] noticed was the defendant had gold teeth, and at that point, I would be seeking to introduce the photograph. . . ." "Asking the [detective] if that is what he looked like in terms of the gold teeth." The court then stated, "*I think [the prosecutor] can do that.*" (Italics added.) The prosecutor then asked the court to clarify its ruling "just to make sure that I do this right." The court stated the detective could testify to "*[a]nything he observed . . . . If he observed [the defendant], he can testify to his observation.*" (Italics added.)

After the court made its final ruling, Detective Harris continued his testimony. The prosecutor asked the detective whether he "noticed [anything] about [defendant]'s physical appearance in particular." The detective responded that defendant "had gold teeth on the top portion of his mouth." The prosecutor then showed defense counsel the booking photograph of defendant with his "gold grill" and then showed it to the detective. The prosecutor asked the detective if the "teeth that you have[] testified to . . . does that photograph accurately depict [defendant], the goldness of the teeth. . . ." The detective replied, "Yes."

4

These facts show that the court's final ruling actually allowed the prosecutor to ask Detective Harris about exhibit 49, the booking photograph of defendant with his "gold grill." As such, there was no error (misconduct or otherwise) in the prosecutor asking the witness about this photograph.

## III

### *The Court Correctly Instructed On Defendant's*
### *Flight Pursuant To CALCRIM No. 372*

Over defense objection, the trial court instructed on defendant's flight pursuant to CALCRIM No. 372. The instruction stated, "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

Defendant contends the instruction should not have been given for two reasons. One, he did not flee. Rather, he was "simply returning home after an overnight stay at the Motel 6." Two, the instruction contained an improper and irrational inference of guilt from flight because "it is not more likely than not that one who flees from police is necessarily guilty of the charged offense." In this way, according to defendant, the instruction violated his federal constitutional rights to due process of law and a jury trial with proof of guilt beyond a reasonable doubt.

As to one, defendant is wrong because "the circumstances of [his] departure . . . suggest[ed] 'a purpose to avoid being observed or arrested.' " (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.) After defendant stabbed the victim and went up to the C.'s car and asked Jonathan C., "[d]o you want some of this," defendant went to a little alley. The C.'s looked for defendant, but they could not find him. This evidence was sufficient to warrant giving the flight instruction.

As to two, arguments very similar to defendant's constitutional arguments have been rejected by the California Supreme Court and our court, and we follow the reasoning of those opinions here.

Regarding due process, the California Supreme Court has explained the following with respect to the predecessor instruction to CALCRIM No. 372, which was CALJIC No. 2.52. "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury. [Citations.] This test permits a jury to infer, if it so chooses, that the flight of a defendant immediately after the commission of a crime indicates a consciousness of guilt. Thus, here the flight instruction does not violate due process." (*People v. Mendoza* (2000) 24 Cal.4th 130, 180.)

Regarding a jury trial with proof beyond a reasonable doubt, we have explained the following: "Even viewing the instruction in isolation, the word 'if' in the operative clause --'If the defendant fled or tried to flee immediately after the crime was committed' -- does not logically modify *only* the phrase 'the defendant fled or tried to flee,' as defendant contends. Rather, 'if' modifies the entire phrase, including the words 'after the crime was committed.' Thus, it is highly unlikely a reasonable juror would have understood the instruction as dictating that 'the crime was committed.' [Citation.] [¶] This conclusion is supported by the other instructions, which told the jury the following things (among others): (1) 'You must decide what the facts are'; (2) 'It is up to all of you and you alone to decide what happened'; (3) 'A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt[]'; and (4) 'Remember that you may not convict a defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant's guilt[] of that crime has been proved beyond a reasonable doubt.' " (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.) These same additional instructions were given here. Finally, as in *Paysinger*, there was no question that a crime occurred; the

6

question was only who did it.  (*Id*. at p. 31.)  Under these circumstances, the jury did not likely misunderstand CALCRIM No. 372 in a way that  "undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt."  (*Paysinger*, at p. 31.)

DISPOSITION

The judgment is affirmed.


      ROBIE      , Acting P. J.


We concur:


      DUARTE    , J.


      HOCH     , J.