Filed 6/6/16  P. v. Adegbenro CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JIHAD A. ADEGBENRO,<br><br>    Defendant and Appellant. | B265513<br><br>(Los Angeles County<br>Super. Ct. No. BA432761) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael Garcia, Judge.  Affirmed.

James C. Pettis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Ilana Herscovitz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

On appeal from his conviction of second degree robbery, defendant Jihad A. Adegbenro's sole contention is that giving a flight instruction (CALCRIM No. 372) was prejudicial error. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*)), the evidence established that the Versace store in the Beverly Center mall is entered through a pair of glass doors. Upon entry, the handbag display is on the customer's right; the cash register is on the opposite side of the store, about 30 feet away. The job of a sales associate at the Versace store is to assist customers, who often have questions because the merchandise is expensive. Javier Valle was one of four sales associates working on January 8, 2015. In his experience, customers usually looked at handbags before picking them up. At about 4:00 p.m. that day, Valle was not working with any customers when he noticed defendant and another man enter the store together; they immediately turned right, towards the handbag display. Valle characterized what followed as a "grab and run." First, Valle observed defendant's companion grab two several-thousand-dollar handbags out of the window display. In response to Valle asking whether he needed help, the companion raised his fist to chest level and in an aggressive voice said, " 'Get back, bro,' " while simultaneously tapping his pants pocket, which Valle understood to mean the companion "had something on him." Frightened, Valle backed away. The companion ran out of the store with the two handbags. Next, defendant grabbed three handbags (also worth several thousand dollars apiece) and moved "aggressively towards the front of the store." But defendant could not leave the store because Valle was standing in the doorway, blocking defendant's way out. Valle called for the security guard, Ian Wanjohi. Defendant was still holding the three handbags when Wanjohi grabbed his arm and told him he had to wait for security. In response to defendant's efforts to pull away, Wanjohi calmly repeated that it was going to be okay, they just needed to wait for security. A passerby entered the store and intervened. After a scuffle involving defendant, Wanjohi and the passerby, defendant

2

was on the ground with the handbags next to him. Once on the ground, defendant stopped resisting. Valle estimated that three or four minutes passed from the time Wanjohi confronted defendant until defendant was on the ground. Wanjohi never hit, punched or kicked defendant. Defendant was handcuffed and moved to a back office; mall security and the police arrived. Photographs and videos of the incident taken by security cameras were introduced into evidence.

Wanjohi's account of the incident was similar to Valle's in all material respects. Wanjohi did not recall hearing Valle call out his name and did not recall a passerby intervening. Wanjohi recalled that he was at the cashier stand when his attention was drawn to Valle, who seemed to be trying to help defendant; but defendant pushed Valle out of the way and tried to leave the store carrying three handbags. Asked what made him believe defendant was trying to leave the store with the handbags, Wanjohi explained, "A customer does not pick up bags and leave." Wanjohi moved to the door to block defendant's exit. After Wanjohi and defendant looked at one another, Wanjohi directed defendant to drop the handbags he was holding. Ignoring Wanjohi's instructions, defendant tried to move around Wanjohi to get out of the store while still holding the three handbags. Wanjohi grabbed defendant by the front of his shirt and felt the shirt ripping as defendant pulled away in his continued efforts to get out of the store. Wanjohi wrestled defendant to the ground and kept him there until mall security arrived. Wanjohi's involvement ended when mall security arrived. Wanjohi reported the incident to his boss at the security company.

When Officer Alan Krish of the Los Angeles Police Department arrived, he saw defendant sitting on the ground surrounded by security guards. Defendant declined medical attention. Krish interviewed Valle and Wanjohi and viewed security camera recordings. Krish transported defendant to the Wilshire Division station. Although defendant did not appear to have any trouble walking, an ambulance was summoned after defendant complained about some knee pain. The emergency medical technicians examined defendant, gave him an ice pack and left.

Defendant presented no evidence.

3

## DISCUSSION

Defendant contends he was denied due process and a fair trial by the giving of CALCRIM No. 372 on flight.  He makes two arguments:  (1) there was no evidence of flight and (2) "there is a real question about whether [defendant] committed any crime."[1]  Neither argument is persuasive.

### A.    *Forfeiture*

The People contend defendant forfeited any appellate challenge to CALCRIM No. 372 because, although he objected to the unmodified version of the instruction, he did not renew his objection to the modified version proposed by the trial court.  The record is to the contrary.

"In general, the failure to object to an instruction bars a defendant from challenging the instruction on appeal.  [Citation.]" (*People v. Cardona* (2016) 246 Cal.App.4th 608, 612.)  To determine whether defendant forfeited his appellate point, we consider the proceedings below.  Pattern CALCRIM No. 372 reads:

> "If the defendant fled [or tried to flee] (immediately after the crime was committed/ [or] after (he/she) was accused of committing the crime), that conduct may show that (he/she) was aware of (his/her) guilt.  If you conclude that the defendant fled [or tried to flee], it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled [or tried to flee] cannot prove guilt by itself."

Defense counsel objected to CALCRIM No. 372, arguing there was no evidence of flight because defendant had never left the store.  The People argued evidence that defendant was running towards the store exit holding the handbags, in the opposite direction of the cash register, warranted giving the instruction.  Noting its sua sponte duty to give CALCRIM No. 372 if the People relied on flight as evidence of guilt, the trial court stated it would give the instruction with the optional bracketed phrase "or tried to flee."  The trial court concluded the discussion of CALCRIM No. 372 with the statement, "The

---

**1**    Defendant argues further that even assuming a finding of harmless error, any such errors are cumulatively prejudicial.  Inasmuch as we have found no error, this argument necessarily fails.

defense's objection is noted." To which defense counsel responded, "Thank you." Consistent with its statement, the trial court included the bracketed language in its charge to the jury. As given, CALCRIM No. 372 read:

> "If the defendant fled or tried to flee after he was accused of committing the crime, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

After the court indicated that it would give a modified version of the instruction, the court noted defendant's objection for the record. On appeal, defendant objects to CALCRIM No. 372 as given on the same grounds he objected to the pattern instruction in the trial court: there was no evidence of flight since defendant never left the store. We conclude defendant's objection to CALCRIM No. 372 on grounds of lack of evidentiary support sufficiently preserved the issue for appeal.

B.      *Sufficiency of the Evidence of Robbery and Evidence of Flight*

Defendant contends he was denied due process and a fair trial by the giving of CALCRIM No. 372 because there was insufficient evidence that, in the words of the instruction, he "committed any crime." Distinguishing *People v. Paysinger* (2009) 174 Cal.App.4th 26 (*Paysinger*), defendant argues "there was a real question about whether [defendant] committed any crime, particularly since he never left the store." We disagree.

1.      Standard of review

For purposes of a sufficiency of the evidence challenge, we review the whole record in the light most favorable to the prosecution, presuming in support of the judgment the existence of every fact the jury could reasonably have deduced, to determine whether there is evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Zamudio, supra*, 43 Cal.4th at p. 357.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient

5

substantial evidence to support" ' the jury's verdict. [Citation.]" (*Ibid.*) The standard is the same where the prosecution relies primarily on circumstantial evidence. "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation.] 'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]" (*Id.* at pp. 357-358.)

We review the correctness of an instruction de novo. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

### 2. Elements of robbery

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) The elements of the crime are set forth in CALCRIM No. 1600:

1. The defendant took property that was not his own;
2. The property was in the possession of another person;
3. The property was taken from the other person or his immediate presence;
4. The property was taken against that person's will;
5. The defendant used force or fear to take the property or to prevent the person from resisting; and
6. When the defendant used force or fear to take the property, he intended to deprive the owner of it permanently.

Regardless of the means by which the defendant originally acquires the property, a "robbery occurs when defendant uses force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence . . . . [Citation.]" (*People v. Estes* (1983) 147 Cal.App.3d 23, 27-28; *People v.*

6

*Pham* (1993) 15 Cal.App.4th 61, 66 (*Pham*) ["mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot. [Citations.]"].) Successful escape with the stolen property is not an element of the crime. (*Pham,* at p. 66.)

       3.       <u>Evidence of robbery and of flight</u>

Defendant argues that there was no evidence that, in the words of the pattern instruction, a "crime was committed" and because that qualifier for giving the flight instruction was not present, the instruction should not have been given. The first hole in defendant's argument is that the phrase "crime was committed" was not used in the final version of the instruction given to the jury. The instruction given to the jury was: "If the defendant fled or tried to flee after he was *accused* of committing the crime . . . ." (Italics added.) Defendant does not quarrel with the notion that he was certainly accused of committing a crime.

Although defendant has not made a separate argument of insufficiency of the evidence to support his conviction, he in essence argues the instruction should not have been given because there was no robbery. He contends there must be more evidence "than being near the entrance of a store where merchandise is on display while holding that merchandise." That may be true but the defendant has presented a myopic view of the evidence of flight. There was much more: defendant ignored the security guard's instructions to drop the handbags and wait for mall security, was holding the handbags while he tried to maneuver around the security guard to get out of the store, and had to be physically restrained from leaving the store.

At the bottom of defendant's argument is the suggestion there can be no flight because he never left the store. That is not the law. Escape is not an element of the offense. (*Pham*, *supra*, 15 Cal.App.4th at p. 66.) Accordingly, defendant gains no benefit from his failed attempt to leave the store. It is undisputed that defendant took three handbags from the display and that he did not pay for them. He wrestled with store personnel as he tried to escape with the goods. A reasonable trier of fact could infer defendant's intent to permanently deprive the store of those three handbags, as well as the

other elements of the offense, from the evidence that defendant was observed entering the store with a companion; immediately after his companion grabbed two handbags and ran out of the store without paying for the purses, defendant himself grabbed three handbags and ran towards the exit doors, in the opposite direction from the cash register. Security guard Wanjohi observed defendant holding three handbags and trying to push sales associate Valle out of the way of the exit doors. Defendant ignored Wanjohi's instructions to drop the handbags. When Wanjohi tried to block defendant from leaving the store with the handbags, defendant tried to maneuver around Wanjohi. Defendant struggled against Wanjohi's efforts to physically restrain him from leaving the store with the handbags. A reasonable juror could conclude that defendant used force to resist employees' attempts to regain possession of the handbags, with the intent to permanently deprive the store (represented by the sales associate and security guard) of them. It is immaterial that defendant did not successfully leave the store with the stolen handbags. Because there was evidence of flight and there was evidence that he was accused of a crime, a flight instruction was proper

Nothing in *Paysinger, supra*, 174 Cal.App.4th 26, cited by defendant, suggests a contrary result. In *Paysinger*, the defendants engaged in flight over an extended geography that included leaving a parking lot, crossing a street, running away, and unsuccessfully attempting to gain a place of repose in a fast food restaurant. In the published portion of the opinion, the appellate court rejected the claim that CALCRIM No. 372 was unconstitutional because it in effect told the jury that a crime had in fact been committed. There, the modified version of CALCRIM No. 372 given by the trial stated, in part: "If the defendant fled or tried to flee immediately after the crime was committed . . . ." The defendant argued the instruction essentially told the jury that he had in fact committed the crime. The appellate court rejected the point out of hand. Because the entire passage was prefaced with "if," the court found it "highly unlikely a reasonable juror would have understood the instruction as dictating that 'the crime was committed.' " (*Paysinger,* at p. 31.) Apparently the defendant there made a separate argument that there was insufficient evidence to support the flight instruction. The

8

discussion of that point was in the unpublished portion of the opinion, so the appellate court's analysis is not citable. (Cal. Rules of Court, rule 8.1115, subd. (a).) Except for part of the probation terms, the Court of Appeal affirmed the conviction.

Although there was an extended effort to escape in *Paysinger* and the flight here was more limited, it does not follow that there was insufficient evidence to give CALCRIM No. 372. Given that escape is not an element of robbery (*Pham*, *supra*, 15 Cal.App.4th at p. 66), that defendant never left the store is of minimal significance. The fact was that after defendant saw his companion escape with his share of the loot, defendant also tried to make a break of it. No more was needed.

## DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.