Filed 6/11/24  P. v. Hannah CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061803 |
| v. | (Super. Ct. No. 21WF2872) |
| SKYLAR HAYES HANNAH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge.  Affirmed.

Spolin Law P.C., Aaron Spolin, Jeremy M. Cutcher and Caitlin Dukes for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Warren J. Williams and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant was sentenced to prison for 30 years to life as a third-strike offender following his convictions for domestic violence and other crimes. On appeal, he contends the jury instruction on flight was flawed, and the trial court abused its discretion in failing to dismiss his prior strike convictions and a sentencing enhancement in the interest of justice. Finding these claims unmeritorious, we affirm the judgment.

## FACTS

Appellant has an extensive criminal record that includes convictions for aggravated assault, domestic battery, illegal gun and drug possession, and violating a protective order. He has also suffered two prior strike convictions, the first of which was for making a criminal threat against the mother of his child in 2014.

The victim of appellant's second strike conviction was Ashley H. Even though appellant had successfully pressured her to recant some of her allegations of abuse, he ended up pleading guilty to inflicting corporal injury on, and making a criminal threat against, her. As part of his plea agreement, appellant was placed on probation and ordered to stay away from Ashley. But despite that order, the two met up at appellant's Garden Grove motel room the very same day it was issued, October 14, 2021.

Their reunion was not a peaceful one. Over the next few days, appellant mistreated Ashley so badly that she ended up secretly booking a flight back to her home in Northern California. When appellant caught wind of this, he confronted Ashley in the motel lobby as she was waiting for a ride to the airport in the early morning hours of October 18. Appellant berated Ashley for trying to leave him and demanded she return to his room. When she refused, he grabbed her by the hair and tried to drag her out of the lobby, but she escaped his clutches, ran behind the front desk, and sought refuge in the back office. Ignoring the desk clerk's plea for peace, appellant entered the office and dragged Ashley back into the lobby. Then he put her in a chokehold and wrangled her outside. However, fearing apprehension, he let go of her in the parking lot and fled the scene.

2

Ashley returned to the lobby and called the police. Responding officers noticed she had several injuries, including facial bruising and red marks on her neck. She told the officers that appellant had physically abused her in their motel room for the past few days. She also explained how appellant had mistreated her in the lobby.

Ashley was transported to the hospital for immediate treatment. She also underwent a follow-up exam in Santa Clara two days later. During the exam, she reported that appellant had repeatedly choked, slapped and threatened her while she was staying with him in Garden Grove. However, at trial, she denied the abuse and insisted appellant was still her boyfriend. She told the jury her neck injuries were from having rough but consensual sex with appellant, and her other injuries resulted from a fight she had with a woman named Taylor.

The jury did not believe Ashley's testimony. Although it deadlocked on charges of kidnapping, false imprisonment and making a criminal threat, it convicted appellant of two counts each of domestic battery causing injury with a qualifying prior conviction and violating a protective order with a qualifying prior conviction, and it also found that he inflicted great bodily injury on Ashley. (Pen. Code, §§ 166, subd. (c)(4), 273.5, subds. (a), (f)(1), 12022.7, subd. (e); all further statutory references are to this code.)

The trial court subsequently determined appellant had suffered two prior serious felony convictions for purposes of the Three Strikes law (§§ 667, subds. (d), (e)(2)(A); 1170.12, subds. (b), (c)(2)(A)) and section 667, subdivision (a)(1). The court also found true aggravating allegations that appellant engaged in violent conduct, had numerous prior convictions of increasing seriousness, and was on supervised release when he committed his crimes. (Cal. Rules of Court, rule 4.421(b)(1), (2) & (4).) After denying appellant's request to dismiss his prior strike convictions and the great bodily injury enhancement, the trial court sentenced him to an aggregate term of 30 years to life in prison. This appeal followed.

3

**DISCUSSION**

I.     *Flight Instruction*

Over appellant's objection, the trial court gave the standard flight instruction, CALCRIM No. 372, to the jury.  Although the instruction benefited appellant by "admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory" (*People v. Jackson* (1996) 13 Cal.4th 1164, 1224), he asserts CALCRIM No. 372 violated his due process right to a fair trial.  We disagree.

A.     *Background*

Pursuant to CALCRIM No. 372, the jury was instructed, "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show he was aware of his guilt.  If you conclude that the defendant fled or tried to flee, it's up to you to decide the meaning and importance of that conduct; however, evidence the defendant fled or tried to flee cannot prove guilt itself."

Appellant does not dispute there was sufficient evidence of flight to justify an instruction on that issue.  However, he claims CALCRIM No. 372 conflicts with section 1127c, a statutory provision that addresses the issue of flight.  That provision states, "In any criminal trial . . . where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:  [¶]  The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence.  The weight to which such circumstance is entitled is a matter for the jury to determine."  (§ 1127c.)

B.     *Analysis*

Appellant argues CALCRIM No. 372 incorrectly states the law as set forth in section 1127c because whereas the sample language in the statute starts out by saying flight alone is insufficient to establish guilt, CALCRIM No. 372 starts out by saying flight may be used to show awareness of guilt.  In so arguing, appellant focuses on the

4

*ordering* of the language in CALCRIM No. 372, as opposed to the *substance* of what that instruction conveyed to the jury. He claims the instruction is argumentative and unconstitutional because it presumes guilt based on flight, thereby "revers[ing] the onus set forth in [section 1127c]." Not so.

CALCRIM No. 372 does not presume anything. It merely allows the jury to infer consciousness of guilt based on evidence of the defendant's flight. And the fact it does so at the outset of the instruction is not problematic because in reviewing the propriety of a jury instruction, we must assess it as a whole; we "do not view one part of an instruction in isolation from another part." (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 31.)

Looking at CALCRIM No. 372 from top to bottom, it does not conflict with section 1127c in any fashion, nor is it argumentative. Both the instruction and the statute plainly state that the jury may, but is not required, to infer guilt from the defendant's flight. In addition, both of them make clear that flight alone is insufficient to prove the defendant is guilty of the charged offenses. Because the overall substance of the instruction and the statute are the same, and they merely convey that substance in a different sequence, the use of CALCRIM No. 372 did not violate appellant's fair trial rights. (*People v. Paysinger, supra,* 174 Cal.App.4th at p. 31 [CALCRIM No. 372 is not unconstitutional or otherwise unlawful]; accord, *People v. Price* (2017) 8 Cal.App.5th 409, 455.)[1]

---

[1] In his reply brief, appellant acknowledges the case law on this issue goes against him, and the California Supreme Court has repeatedly upheld CALCRIM No. 372, and its predecessor CALJIC No. 2.52, against constitutional attack. (See, e.g., *People v. Navarette* (2003) 30 Cal.4th 458, 502; *People v. Mendoza* (2000) 24 Cal.4th 130, 179-180; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1243-1244.) However, he contends these cases were wrongly decided and are out of step with evolving concepts of due process. But as a lower appellate court, we are powerless to depart from rulings of our Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.) And even if we could, for the reasons explained above, we would not do so in this case.

II.       *Sentencing*

Appellant contends the trial court abused its discretion by sentencing him as a third-strike offender and failing to dismiss his enhancement for inflicting great bodily injury on Ashley.  The record shows otherwise.

A.       *Factual Background*

At sentencing, defense counsel invited the trial judge to dismiss his prior strike convictions pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.  However, the judge declined to do so, stating "I do not believe [appellant] lies outside the spirit of the [Three Strikes] law; rather, I believe he is exactly the type of defendant that should be sentenced pursuant to [that] law."  Thus, the court sentenced appellant to 25 years to life in prison on the base term for domestic battery.

The judge also turned down appellant's request to dismiss the great bodily injury enhancement.  Instead, she imposed the upper term of five years for the enhancement, bringing appellant's sentence to 30 years to life.  Believing that term was sufficient to meet the goals of the Three Strikes law, the judge stayed the sentence on the remaining counts or ordered them to run concurrently with the base term.  She also struck appellant's two 5-year priors under section 667, subdivision (a).

B.       *The Three Strikes Law and Section 1385*

We first address the trial court's refusal to strike appellant's strike convictions.  In reviewing that decision, "we must keep in mind the Three Strikes law is designed to 'punish repeat criminal offenders severely' and 'drastically curtail a sentencing court's ability to reduce the severity of a sentence by eliminating alternatives to prison incarceration.' [Citation.]  To that end, the law mandates the imposition of a 25-year-to-life prison sentence in cases – such as this one – where the defendant is convicted of a serious or violent felony and has previously been convicted of two such felonies.  [Citations.]  In other words, 'If, after having suffered two qualifying felony convictions, an offender commits a third qualifying felony, the Three Strikes law

6

presumes he or she is incorrigible and requires a life sentence.' [Citation.]" (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1104-1105.)

"That doesn't mean trial courts are powerless to deviate from the Three Strikes law. Under section 1385, the trial court is empowered to strike a prior strike conviction 'in the furtherance of justice.' [Citations.] However, that great power should only be used in 'extraordinary' circumstances, when the ends of justice demand it. [Citations.]" (*People v. Mayfield, supra*, 50 Cal.App.5th at p. 1105.)

"In determining whether such circumstances exist in a given case, the trial court must balance society's legitimate interest in imposing longer sentences for repeat offenders and the defendant's constitutional right against disproportionate punishment. [Citation.] It must also consider the nature of the defendant's present felonies and prior strike convictions, as well as his background, character and prospects. [Citation.]" (*People v. Mayfield, supra*, 50 Cal.App.5th at p. 1105.)

1. *Standard of Review*

"We review the denial of a motion to dismiss a strike allegation for abuse of discretion. [Citation.] Abuse of discretion in failing to strike a prior conviction occurs in limited circumstances: where the trial court is not aware of its discretion; where the trial court considers impermissible factors; or where applying the Three Strikes law would produce an arbitrary, capricious, or patently absurd result under the specific facts of a particular case." (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029, citing *People v. Carmony* (2004) 33 Cal.4th 367, 374.)

2. *Analysis*

The trial judge in this case was fully aware she had the discretion to dismiss one or more of appellant's prior strike convictions. However, she chose not to exercise that discretion due to appellant's extensive criminal history and the violent nature of his current offenses. The judge also found it significant that appellant victimized the same person in his second and third strike cases and that the third strike case arose just hours

7

after he pleaded guilty in his second strike case. Based on those troubling circumstances, the trial judge could reasonably infer that appellant had no desire to reform his dangerous criminal behavior. Indeed, based on appellant's egregious conduct in the present case, it appears he has learned nothing from his many previous encounters with the criminal justice system.[2]

Although the trial judge was aware that appellant came from a broken home, experienced childhood trauma, and had a longstanding drug problem, she did not believe these factors outweighed the aggravating factors so as to justify striking one or more of his prior strike convictions. Appellant argues otherwise, but the record shows his grandparents stepped up to raise him in his parents' absence, and he has done little to overcome his drug problem. While appellant did attend a substance abuse program at one point, he was terminated from the program after a mere two weeks. There is nothing to suggest appellant understands the true impact of his drug problem or has accepted full responsibility for the harm his criminal conduct has caused.[3]

Based on all of the circumstances presented, we agree with the trial court's assessment that appellant "is exactly the type of defendant [the Three Strikes] law was written for." The record does not support appellant's contention that the trial court abused its discretion by overemphasizing his criminal record or failing to consider any potentially mitigating circumstances.

Nevertheless, in seeking to avoid application of the Three Strikes law, appellant draws our attention to the sentencing brief his attorney filed in the trial court.

---

[2]     The probation report reflects appellant suffered over 40 convictions between 2007 and the time this case arose in 2021. He also performed poorly on probation and parole during that period.

[3]     Appellant told the probation officer he was embarrassed by his actions in the present case and wished they had never occurred, which is a far cry from a true mea culpa.

8

The brief states that, before appellant's trial began, the prosecution had offered him a plea deal with a 15-year prison sentence, and a judge had given an indicated sentence of just 6 years. Appellant contends his 30-year-to-life sentence is unfairly disproportionate to these pretrial offers. However, defense counsel's sentencing brief also makes clear that appellant voluntarily decided to reject those offers and take his chances at trial. There is nothing in the record to suggest that appellant was coerced into going to trial, or that the sentencing judge punished him for exercising his constitutional right to trial. To the contrary, the record shows appellant's attorney advised him to accept the pretrial offers due to the fact his prison exposure exceeded 30 years to life. However, thinking he could prevail at trial, appellant decided to turn down the offers. That being the case, there is no reason to disturb his indeterminate life sentence.

C. *The Great Bodily Injury Enhancement*

Appellant also takes aim at the five-year sentence enhancement he received for inflicting great bodily injury on Ashley. He contends the court was required to strike the enhancement under the plain wording of section 1385, subdivision (c)(2)(C), but, as we now explain, that is incorrect.

1. *The Statutory Framework*

As amended in 2021, section 1385, subdivision (c)(1) mandates the dismissal of a sentencing enhancement if dismissal would further the ends of justice. (See Sen. Bill No. 81, 2021-2022 Reg. Sess., Stats. 2021, ch. 721, § 1.) But subdivision (c)(2) of the statute makes it clear that the furtherance-of-justice standard is discretionary in nature and contemplates the consideration of public safety. It states, "In exercising its *discretion* under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless the court*

9

*finds that dismissal of the enhancement would endanger public safety*." (§ 1385, subd. (c)(2), italics added.)

Of the nine mitigating circumstances listed in subparagraphs (A) to (I), seven simply describe the nature of the evidence that must be shown, such as proof that application of the enhancement would result in discriminatory racial impact, or that the current offense is connected to mental illness. (§ 1385, subd. (c)(2)(A) & (D).) But two of the mitigating circumstances are not merely descriptive; they also speak to the prospect of dismissal if those circumstances are present. They are set forth in subparagraphs (B) and (C) as follows:

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement *shall be dismissed*.

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement *shall be dismissed*." (§ 1385, subd. (c)(2)(B) & (C), italics added.)

2.      *Analysis*

Appellant argues the 20-year limitation in subparagraph (C) applies in this case to bar punishment for his great bodily injury enhancement. But as respondent notes, appellant's sentence already exceeded 20 years before the enhancement was added to his sentence. Therefore, it does not appear that subparagraph (C) applies here. But assuming it does, we agree with respondent's alternative argument that the trial court was justified in imposing the great bodily injury enhancement in the name of public safety.

Appellant begs to differ. In his view, public safety has no bearing on subparagraph (C) because by its express terms it mandates dismissal whenever its terms apply. We agree with appellant that the phrase "shall be dismissed" is not ambiguous on its face, and the provision appears straightforward when viewed in isolation. However, when used in a statute, the word "shall" does not always impose a mandatory duty. (*People v. Anderson* (2023) 88 Cal.App.5th 233 (*Anderson*).) Although it typically does,

10

"'there are unquestionably instances in which other factors will indicate [the term] was not intended to foreclose [the] exercise of discretion. [Citations.]' [Citation.]" (*Bradley v. Lacy* (1997) 53 Cal.App.4th 883, 889.)

As the *Anderson* court explained, section 1385 provides a prime example of this. Examining the "shall be dismissed" language in subparagraphs (B) and (C) of subdivision (c)(2), *Anderson* stated, "'we are not permitted to pluck this phrase out of its placement in the statute and consider it in isolation; instead, we are required to consider where it fits into the ""context of the statute as a whole."" [Citation.] Here, the statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' (§ 1385, subd. (c)(1), italics added.)" (*Anderson, supra*, 88 Cal.App.5th at p. 239.)

"In other words, the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice. The nature of this condition is further explained by the Legislature's directive that the court, while 'exercising its discretion under this subdivision, . . . shall consider and afford great weight' to evidence of certain factors, and proof of one of the factors 'weighs greatly' in favor of dismissal 'unless' the court finds dismissal would endanger public safety. [Citation.] This language, taken together, explicitly and unambiguously establishes: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*Anderson, supra*, 88 Cal.App.5th at p. 239.)

*Anderson* therefore concluded that if the circumstances in subparagraphs (B) or (C) are found to exist, "dismissal *shall* occur but only *if*, in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety." (*Anderson, supra*, 88 Cal.App.5th at p. 240.) As other courts have noted, this conclusion comports with the Legislature's intent

11

in amending section 1385, and it also avoids the absurd consequence of rendering certain enhancements ineffective.  (See, e.g., *People v. Mazur* (2023) 97 Cal.App.5th 438; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 294-297; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15-21; *People v. Walker* (2022) 86 Cal.App.5th 386, 396-398, review granted Mar. 22, 2023, S278309.)  Thus, we likewise conclude that the decision to strike an enhancement implicating section 1385, subdivision (c)(2)(C) is a discretionary one to be informed by whether dismissal would be in the interests of justice and public safety.

Here, the trial court not only declined to strike appellant's great bodily injury enhancement, it found the interests of justice warranted imposition of the upper term for the enhancement.  Appellant argues the failure to strike was an abuse of discretion because Ashley had recanted her allegations against him, minimized her injuries, and asked the court to go easy on him.  However, that is precisely why the trial court imposed the enhancement instead of striking it.  Given Ashley's habit of forgiving appellant's mistreatment of her, the court determined that sentencing appellant to a lengthy prison term was necessary to protect Ashley "from herself," meaning her inclination to overlook appellant's past abuse and to expose herself to further physical harm by being in his presence.

This was not an unreasonable determination.  The cycle of violence between Ashley and appellant was a legitimate concern for the court, and we see no abuse of discretion in the court's decision to punish appellant for inflicting great bodily injury on Ashley in this case.

## DISPOSITION

The judgment is affirmed.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.